UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHELLE RENEE MLADEK,                                 Case No. 17-10948-t7

    Debtor.

VELMA MORGAN, PERSONAL REPRESENTATIVE
OF THE ESTATE OF WAYNE MARSHAL COLEMAN,

    Plaintiff,

v.                                                                        Adv. No. 17-01047-t

MICHELLE RENEE MLADEK,

    Defendant.

**OPINION**

    Before the Court is Plaintiff's § 523(a)(6) nondischargeability action against Defendant. Plaintiff claims Defendant concocted an illegal scheme to take her house, causing willful and malicious injury. Defendant responds that she thought, wrongly it turns out, her actions were lawful and were directed toward an abandoned property. Defendant asserts she had no intent to injure Plaintiff or anyone else. After trial on the merits, the Court finds and concludes that Defendant lacked the requisite mental state for § 523(a)(6) nondischargeability. The debt at issue therefore is dischargeable.

## I. FACTS[1]

The Court finds:

From about March 1989 until his death in 2011, Wayne Coleman owned and lived in a house with a street address of 1203 Puerto Rico, Alamogordo, NM 88310.

Mr. Coleman's next of kin is Plaintiff, a cousin. Plaintiff lives in Albuquerque. Before Mr. Coleman's death, she did not see or hear from him often.

On September 20, 2011, the Alamogordo police were asked to visit Mr. Coleman's house to conduct a "welfare check." The found Mr. Coleman's body.[2] The police also found a holographic will bequeathing the house and Mr. Coleman's other possessions to Plaintiff.

Due to a serious and inexcusable failure of communication, the police did not notify Plaintiff of Mr. Coleman's death until November 8, 2013. The Alamogordo police called Plaintiff on that date to notify her that a truck owned by Mr. Coleman had been stolen.

On August 7, 2014, Plaintiff brought a probate proceeding in Alamogordo, which currently is pending. Plaintiff is Mr. Coleman's duly appointed personal representative.

Because Plaintiff did not know Mr. Coleman had died, the house sat empty and uncared-for for several years. Property taxes were not paid. Burglars had taken everything of value. The exterior of the house run-down and shabby. The yard had tall weeds. In the fall of 2014, the house looked abandoned.

---

[1] In making its findings, the Court took judicial notice of the docket in the main case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). The Court also took judicial notice of the New Mexico Supreme Court and Disciplinary Board suspension, censure, and disbarment orders relating to Defendant.

[2] The record does not contain a date of death. When the police discovered Mr. Coleman's body he had been dead for some time, but the record does not reveal how long.

Defendant attended Texas Tech Law School and was a licensed New Mexico attorney between 2005-2016. Defendant moved to Ruidoso in October 2004. She specialized in immigration law but also had a civil litigation practice. Defendant never worked with experienced attorneys and never was properly trained. Her law practice helped her pay the bills but was not lucrative. Like many lawyers with marginal practices, she was eager for paying work. Based on her subsequent disbarment, it appears Defendant never achieved competence as an attorney and apparently had a difficult time admitting her shortcomings or seeking help.

In mid-2014, a Mr. Joseph Vincent met with Defendant and asked her to work for him on his house-flipping "program." In general, Mr. Vincent would identify abandoned houses in Alamogordo, New Mexico, pay the past due taxes on the houses, file liens on the houses and otherwise claim an interest in them, and then sue to quiet title to the houses in his name. After obtaining title, Mr. Vincent would repair the houses and sell them at a (hoped-for) profit. To implement this program, Mr. Vincent worked openly with the county treasurer's office and a local title company. There was nothing secret about Mr. Vincent's program.

There were glaring problems with the program, however. First, paying past-due property taxes on a house did not give Mr. Vincent the right to a lien on or other interest in the house. Second, a quiet title action is not the proper way to foreclose a lien. Third, to the extent the legal theory was adverse possession, Mr. Vincent's actions clearly fell short of creating a colorable adverse possession claim. Thus, the legal theories upon which Mr. Vincent got title to his houses had obvious flaws. Nevertheless, using these techniques, Defendant was able to quiet title to several abandoned houses.

Defendant signed on wholeheartedly to Mr. Vincent's program and represented him as counsel in several quiet title actions. Defendant thought the program benefited Alamogordo

without hurting anybody: in her view the program paid past due property taxes and converted abandoned houses into habitable, affordable dwellings. Defendant also thought the method she used to obtain title to the houses was legitimate.

In the summer of 2014, when Mr. Vincent's house-flipping program was in full swing, Mr. Coleman's house appeared to be abandoned. Mr. Vincent and Defendant identified the house as a good candidate for the program. However, because Mr. Vincent was out of town or otherwise unable to act promptly, a limited liability company Defendant owned[3] paid the past-due property taxes on the house, filed a lien, and sued to quiet title. The Hand of God was to convey the house to Mr. Vincent after it took title, while Mr. Vincent was to reimburse the company for its expenses, including Defendant's attorney fees.

The Hand of God brought a state court quiet title action on September 27, 2014, which was assigned to the Hon. Angie Schneider. Plaintiff was named as a defendant served with process.

Unlike Mr. Vincent's other house-flipping ventures (where the houses apparently were in fact abandoned), Plaintiff retained counsel, filed a petition to cancel the lien (December 17, 2014),[4] and filed an answer, counterclaims, and third-party claims against Defendant (December 18, 2014). The counterclaims and third-party claims were for slander of title, malicious abuse of process, fraud, and violations of the Unfair Trade Practices Act.

---

[3] The Hand of God LLC, a New Mexico limited liability company.
[4] The petition to cancel the lien was brought under the New Mexico Lien Protection Efficiency Act, N.M.S.A. § 48-1A-1 et seq. (the LPEA").

Meanwhile, on February 18, 2015, the New Mexico Supreme Court suspended Defendant from the practice of law, but deferred the suspension if Defendant satisfied certain conditions.[5] The deferred suspension was the beginning of the end of Defendant's legal career.

On April 22, 2015, Judge Schneider canceled the Hand of God's lien and awarded Plaintiff $4,133.83 in damages under the LPEA. Three months later Plaintiff filed a motion for partial summary judgment on Defendant's quiet title claim and Plaintiff's slander of title claim.

Defendant was disbarred in December 2016.

Judge Schneider held a hearing on the partial summary judgment motion on January 17, 2017. The trial record contains an unofficial "log" of the hearing that includes:

| Time | Speaker | Note |
| --- | --- | --- |
| 10:18:42 AM | J | GRANTS MOTION FOR SUMMARY JUDGMENT QUITE TITLE DISMISSED, ORDERS ATTORNEY'S FEES, FILE AFFIDAVIT, AWARD PUNITIVE DAMAGES WILL WAIT UNTIL HAVE AFFIDAVIT. IF HEARING NEEDED WILL SET |
| 10:19;51 AM | MR ORTIZ | WILL SUBMIT AFFIDAVIT AND ORDER |
| 10:20:10 AM | J | OBJECTION |
| 10:20:14 AM | MR BEZPALKO | MAKES STATEMENT |
| 10:20:37 | J | WILL LOOK FOR ORDER ANYTHING |
| 10:20:44 AM | ATTNS | NO |
| 10:20:46 AM | J | INR ECESS |

Defendant filed this case on April 18, 2017. At that time, no order or judgment had been entered memorializing Judge Schneider's oral ruling. The trial record does not show whether Plaintiff's counsel filed the requested affidavit.

---

[5] The conditions included finding two licensed attorneys willing to serve as her supervising attorneys, meeting weekly with those attorneys, having the supervising attorneys submit monthly written reports, paying $380 in restitution to a former client, and attend 20 hours of CLE on immigration law.

Plaintiff filed this adversary proceeding on June 21, 2017, seeking to declare her claim nondischargeable under § 523(a)(2). Plaintiff amended her complaint on April 9, 2018, to add a count under § 523(a)(6). The parties proceeded to trial solely on the § 523(a)(6) claim.

Defendant's life after disbarment has been difficult. Her health is poor. She had to file this bankruptcy case. She lost all the real estate she owned to foreclosure. Defendant is living with a daughter and caring for her granddaughter. To make money, Defendant cleans the houses of two or three families who attend her church.

## II.   DISCUSSION

A.   <u>Res Judicata</u>.[6]

Plaintiff argues that Judge Schneider's oral ruling is res judicata and establishes that Defendant's actions were willful and malicious.[7]

1.   <u>In General</u>. A final judgment from another court can have a preclusive effect in a subsequent bankruptcy case. *Crespin*, 551 B.R. at 895. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997), citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (same).

Claim and issue preclusion are recognized in New Mexico. *See Lopez Roofing Serv. v. Baker (In re Baker)*, 2013 WL 6528813, at *3-4 (Bankr. D.N.M. 2013) (listing elements of claim and issue preclusion under New Mexico law).

---

[6] Res judicata encompasses both claim preclusion and issue preclusion. *See In re Crespin*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016), citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).
[7] The basis for this argument is that the elements of a slander of title claim under New Mexico law include willfulness and malice. *See Den-Gar Enterprises v. Romero*, 94 N.M. 425, 430 (S. Ct. 1980).

-6-

2. <u>Claim Preclusion</u>. Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding. *Strickland*, 130 F.3d at 1411, citing *State ex rel Martinez v Kerr-McGee Corp.*, 898 P.2d 1256, 1259 (N.M. App. 1995). Under New Mexico law, claim preclusion requires four elements: "(1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits." *Strickland*, 130 F.3d at 1411, citing *Myers v. Olson*, 676 P.2d 822, 824 (N.M. 1984). Here, the case involves the same parties but different causes of action. In the state court action, Judge Schneider addressed quieting title, lien validity, slander of title, malicious abuse of process, fraud, and unfair trade practices. This Court, in contrast, is dealing with debt nondischargeability under § 523(a)(6). Claim preclusion does not apply in this case.

3. <u>Issue Preclusion</u>. Under New Mexico law, issue preclusion bars relitigation of an ultimate fact or issue if: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the … [present] … case is different from the cause of action in the prior … [case], (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365-66 (N.M. 2010), citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 850 P.2d 996, 1000 (N.M. 1993). See also *Deflon v. Sawyers*, 137 P.3d 577, 582-83 (N.M. 2006) (a difference between claim preclusion and issue preclusion is that the latter does not require that both suits be based on the same cause of action).

"Necessarily determined" means the issue was determined as part of a final judgment. *See* Restatement (Second) of Judgments, § 27 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a

different claim"); *see also Martinez v. Kerr-McGee*, 120 N.M. at 122 (stating that there must be a final judgment and citing the Restatement of Judgments); *Tunis v. Country Club Estates Homeowners Ass'n, Inc.*, 318 P.3d 713, 718 (N.M. App. 2014) (citing another section of the Restatement (Second) of Judgments discussing final judgments and issue preclusion); *State v. Collier*, 301 P.3d 370, 376 (N.M. 2013) (issue preclusion in the double jeopardy context requires, inter alia, a valid and final judgment).

Bankruptcy courts may use issue preclusion in determining whether a debt is nondischargeable. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991) (collateral estoppel principles apply in discharge exception proceedings under § 523); *Brown v. Brown*, 2013 WL 5376541 at *3 (Bankr. D.N.M.) ("A state court judgment can have collateral estoppel effect for purposes of establishing the non-dischargeability of a particular debt under § 523."). However, issue preclusive effect should be allowed for state court judgments in nondischargeability litigation "only if, inter alia, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Brown*, 2013 WL 5376541 at *5, citing *Hutton v. Ferguson (In re Hutton)*, 463 B.R. 819, 825-26 (Bankr. W.D. Tex. 2011), and *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994).

Partial summary judgments are not considered final judgments for issue preclusion purposes. *See Noland v. City of Albuquerque*, 2011 WL 13290262, *12 (D.N.M.) (after extensive analysis of federal and state law, the court concluded that a partial summary judgment is not entitled to preclusive effect because it is not a final judgment); *In re Loughery*, 2010 WL 4642131, at *6, 8 (Bankr. N.D. Ga.) (because the district court's partial summary judgment was

-8-

interlocutory, it was not entitled to preclusive effect); *American Cas. Co. of Reading, Pennsylvania v. Sentry Federal Sav. Bank,* 867 F. Supp. 50 (D. Mass. 1994) (declining to treat a partial summary judgment as a final judgment for issue preclusion purposes); cf. *Shakman v. Democratic Party Org. of Cook County*, 2004 WL 407015, at *8 (N.D. Ill.) (giving preclusive effect to a partial summary judgment).

   4. <u>Judge Schneider's Oral Ruling is Not Entitled to Preclusive Effect</u>. There are several reasons why it would not be appropriate to give Judge Schneider's oral ruling preclusive effect. First, the Court finds *Noland* persuasive that partial summary judgments are not final orders entitled to preclusive effect. Second, no ruling can be considered final until it is reduced to writing and entered on the docket. *See Smith v. Love,* 101 N.M. 355, 356 (S. Ct. 1984) ("no appeal will lie from anything other than an actual written order or judgment signed by the judge and filed with the court"). There is no question that Judge Schneider's oral ruling has never been reduced to a written judgment. Third, the informal "log" of the oral ruling is too vague and cryptic to serve as a basis for issue preclusion. Fourth, Judge Schneider did not make "specific, subordinate, factual findings on the identical dischargeability issue in question." *Brown,* 2013 WL 5376541 at *5. Finally, the "willful" and "malice" elements of a slander of title claim differ from the "willful" and "malicious" elements in § 523(a)(6). For example, in a slander of title claim the recording or publishing must be willful, whereas in a § 523(a)(6) proceeding it is the *injury* that must be willful.

B. <u>Nondischargability under § 523(a)(6)</u>.

  Section 523(a)(6) excepts from discharge any debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." To prevail under § 523(a)(6) a creditor must prove: (1) either she or her property sustained an injury; (2) the injury was caused by the debtor; (3) the debtor's actions were "willful;" and (4) the debtor's actions were

"malicious." *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012). *See also Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (debtor's actions that caused the injury must be both willful and malicious).

1. <u>Willful</u>. To be willful, a debtor must have intended both the act and the resulting harm. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."). The required intent includes the belief that the injury is "substantially certain to result." *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *1 (10th Cir. 2000) (quoting *Kawaauhau v. Geiger*, 113 F.3d 848, 852 (8th Cir. 1997), affirmed, 523 U.S. 57).

The Tenth Circuit follows a subjective standard in determining whether a defendant injured a plaintiff willfully. *Englehart*, 2000 WL 1275614, at *3 (the "'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). *See also In re Cain*, 2014 WL 5852152, at *3 (D. Colo.) (quoting *Englehart*); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999) (intent means that the actor desires to cause consequences of his act or believes the consequences are substantially certain to result from it).

2. <u>Malicious</u>. For a debtor's actions to be malicious, it must be intentional, wrongful, and done without justification or excuse. *Deerman*, 482 B.R. at 369, n. 18 (citing *Bombardier Capital, Inc. v. Tinkler*, 311 B.R. 869, 880 (Bankr. D. Colo. 2004)).[8] *See also Saturn Systems, Inc.*

---

[8] *Tinkler* got the "wrongful act, done intentionally, without just cause or excuse" language from *Tinker v. Colwell,* 193 U.S. 473, 486 (1904).

-10-

*v. Militare (In re Militare)*, 2011 WL 4625024, *3 (Bankr. D. Colo.) (a "wrongful act, done intentionally, without just cause or excuse"); *Tso v. Nevarez (In re Nevarez)*, 415 B.R. 540, 544 (Bankr. D.N.M. 2009) (without justification or excuse); *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 180-81 (Bankr. D. Utah 1999) (without justification or excuse).

    3.    <u>Applying the Facts of This Case to the § 523(a)(6) Elements</u>. This is a somewhat troubling proceeding. The scheme Defendant came up with was highly improper. Any lawyer should have seen that at once. Further, prior to disbarment Defendant was slow to admit her shortcomings as a lawyer and persisted in unprofessional conduct long after she should have sought help and guidance. Had Defendant been less stubborn and more willing to admit her limitations, she might have salvaged her legal career and Plaintiff might never have had to defend the bogus quiet title action.

Nevertheless, the Court heard Defendant testify at some length and formed conclusions about her basic truthfulness and honesty. The Court finds that Defendant believed Mr. Vincent's program was a good thing, not an illegal scheme to deprive homeowners of their property. Defendant thought the houses were in fact abandoned, and that paying the past due taxes, taking title, and flipping them was a "win" for everybody. Further, the Court finds that Defendant believed her method of obtaining title to the abandoned houses was legitimate.

Further, the Court finds that Defendant did not intend to take the house from Plaintiff. Had Defendant and Mr. Vincent known about the bizarre two-year delay in notifying Plaintiff of Mr. Coleman's death, they would not have included the house in Mr. Vincent's program. The trial record indicates that Defendant and Mr. Vincent took some pains to find houses that really were abandoned. The Court can understand why they thought Mr. Coleman's house was.

-11-

Case 17-01047-t    Doc 54    Filed 05/17/19    Entered 05/17/19 16:25:59 Page 11 of 12

In sum, while the Court finds that Defendant's actions were ignorant and contrary to New Mexico law, the Court also finds that the actions were neither willful nor malicious.

If the standard for § 523(a)(6) nondischargeability were negligence, or even gross negligence, then Defendant's debt to Plaintiff would be nondischargeable. With the high *mens rea* required for § 523(a)(6) claims, however, the debt is dischargeable.

Finally, it is worth noting that Defendant has paid a high price for her shortcomings as a lawyer. Despite getting through law school and working for ten years to build up a practice, Defendant is now disbarred, penniless, in poor health, living with a daughter, and cleaning houses to help make ends meet.

### III.  CONCLUSION

Plaintiff's claims against Defendant are dischargeable. The Court will enter a separate judgment to that effect.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 17, 2019
Copies to: counsel of record